EQUITABLE TRUST COMPANY, a corporation of the State of Delaware (formerly The Equitable Guarantee and Trust Company), Trustee under the Last Will and Testament of JENNIE D. CAUSEY,

*vs.*

EDWARD H. CAUSEY, HENRY D. CAUSEY, VIRGINIA C. LLOYD, JENNIE D. C. MARSHALL, and ELISABETH C. SEARLES.

*New Castle, Dec. 12, 1939.*

*Robert H. Richards, Jr.,* of the firm of Richards, Layton & Finger, for complainant.

*Robert G. Houston,* for defendant Jennie D. C. Marshall.

THE CHANCELLOR: This is a bill for instructions filed by the complainant, to whom the property of Jennie D. Causey, deceased, was bequeathed and devised, in trust, by her last will and testament. The real question to be determined, however, depends on the construction of the last will and testament of Peter F. Causey, Jr., who was one of the six surviving children of Jennie D. Causey. Mrs. Causey died May 3rd, 1909, and under the provisions of her will Peter F. Causey, Jr., was entitled to a one-sixth part of the income from her real and personal estate during his lifetime. He died unmarried, and without issue, August 19th, 1937, having previously executed a paper writing, dated February 12th, 1912, which was subsequently proved and allowed as his last will and testament by the Register of Wills, for Sussex County.

The will of Jennie D. Causey, among other things, provided that if Peter F. Causey, Jr. should die without leaving a child or children he should have the power to direct the

payment of the share of the income from her estate, which he had received and enjoyed during his lifetime, to such person or persons for life as he should designate in his last will and testament, or by a writing in the nature thereof. Her will, also, provided that if he should fail to exercise that power, the share of the income in question should be paid by the trustee to his surviving brothers and sisters, in equal shares, during their respective lives.

The precise question to be determined is whether, though Mr. Causey left a will, he exercised the power of appointment given him by the will of his mother. His will is quite brief. After revoking all prior wills, he gives, devises and bequeaths to his sister, Jennie D. C. Marshall, her heirs and assigns, forever "the residue of my property of which I may die possessed, real, personal and mixed." In the same sentence he, also, appoints Mrs. Marshall "Executrix of this my last will and testament without bond."

Like all other questions involving the construction of wills, whether the donee of a power of appointment, which could be exercised by a last will and testament, did in fact exercise that right by such an instrument executed by him, is purely a question of intention; and that intent must be ascertained from the language of the will, when read as a whole. *Wilmington Trust Co. v. Grier, et al.,* 19 *Del. Ch.* 34, 161 *A.* 921. In determining that question, we must bear in mind that the common law rule, relating to proof of the proper execution of a power of appointment, still applies in this State; and under that rule the intention to execute the power must be so clearly apparent "that the transaction is not fairly susceptible of any other interpretation." In fact, "if it be doubtful, under all the circumstances, then that doubt will prevent it from being decreed an execution of the power." *Lane v. Lane,* 4 *Pennewill* 368, 55 *A.* 184, 187, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Blagge v. Miles,* 3 *Fed. Cas. page* 559, *No.* 1479; see, also, *Wilmington Trust Co. v. Grier, et al.,* 19 *Del. Ch.* 34, 161 *A.* 921; *Equit-*

*able Trust Co. v. Paschall, et al.*, 13 *Del. Ch.* 87, 115 *A.* 356; *Security Trust & Safe Dep. Co. v. Ward,* 10 *Del. Ch.* 408, 93 *A.* 385.

By adjudications extending over a long period of time, courts have, however, laid down certain general rules for their guidance which will be helpful in most cases where the execution of a power of appointment is involved. In considering that question, three classes of cases have been held to be sufficient demonstrations of an intended execution of a power: "(1) where there has been some reference in the will or other instrument, to the power; (2) or a reference to the property, which is the subject on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power." *Wilmington Trust Co. v. Grier, et al.*, 19 *Del. Ch.* 34, 161 *A.* 921, 923; *Lane v. Lane,* 4 *Pennewill* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122.

In *Hales v. Magerum,* 3 *Vesey,* 301, the Master of the Rolls stated the same rule, though in slightly different language; referring to the leading case of *Andrews v. Emmot,* 2 *Bro. C. C.* 304, 29 *Eng. Rep.* 166, he said:

> "To execute a power there must be a direct reference to it, or a clear reference to the subject, or something upon the face of the will, or independent of it some circumstance which shows the testator could not have made that disposition without having intended to comprehend the subject of his power."

The will of Peter F. Causey, Jr. neither refers to the power given him, nor to the subject of it; and it is not contended that its language, standing alone, in any way indicates an intent to execute that power. Personal property, which in no sense belonged to Mr. Causey, is the subject of the power involved in this case; and, as I have already pointed out, what he disposes of in his will in so many words is "the residue of my property of which I may die possessed." In considering that language, it must be conceded that by

the decided weight of authority a general bequest of property of that nature, or of the remainder or residue of such property, is in no sense a specific reference to personal property owned by the testator at the time the will was made, and, therefore, is not an execution of the power. *Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del. Ch.* 102, 180 *A.* 597; *Lane v. Lane*, 4 *Pennewill* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122; *Eqiutable Trust Co. v. Paschall*, 13 *Del. Ch.* 87, 115 *A.* 356; *Andrews v. Emmot*, 2 *Bro. C. C.* 297, 29 *Eng. Rep.* 162; *Nannock v. Horton*, 7 *Ves. Jr.*, 390, 32 *Eng. Rep.* 158; *Sug. on Powers*, (3 *Amer. Ed.*) 423; 32 *A. L. R.* 1395; 91 *A. L. R.* 442.

It is contended, however, that the nature and amount of Mr. Causey's property, both at the time his will was made and at the time of his death, must be considered in determining his intent; and when so considered clearly indicate an intent to execute the power, as otherwise his will would have no effect because no property, whatever, would pass under it. His will was executed in February of 1912. Evidence admitted, without objection, shows that at or shortly prior to that time, his sister, Jennie D. C. Marshall, lent him $3,000 no part of which was ever repaid. He was an engineer, and intended to use that money to go into business; apparently, the venture was unsuccessful. Independent of any question about the $3,000 borrowed, when his will was made he had no property, whatever, except his interest for life in the income from the trust estate created by his mother. At the time of his death, his share in the accrued and undistributed income from that estate amounted to slightly in excess of $90, but he had no other property. When he was unemployed he lived with his sister, Mrs. Marshall, the greater part of the time, but before his death had been in a hospital for some months. There is, also, testimony in the record that after Mr. Causey had executed his will he referred to his interest in his mother's estate and said, by the execution of that paper, he intended to repay the money borrowed by him from Mrs. Marshall. This evidence was

not objected to; but declarations by a testator as to the real intent and purpose of the language used by him in his will clearly are not admissible evidence and cannot be considered in determining whether Mr. Causey, by the execution of his last will and testament, intended to execute the power of appointment given him under the will of his mother, Jennie D. Causey. 1 *Sug. on Powers,* (3 *Amer. Ed.*) 418; 14 *Encyl. of Evid.,* 505, 506; 91 *A. L. R.* 442, 453; 21 *R. C. L.* 797; see, also, *White v. Hicks,* 33 *N. Y.* 383. The same rule is applied in construing contracts. *Colvocoresses v. W. S. Wasserman Co.,* 8 *W. W. Harr.* (38 *Del.*) 253, 190 *A.* 607.

When evidence of pertinent surrounding facts and circumstances is admitted and considered, it merely involves the application of well settled general principles in construing wills or other instruments in writing, which are not perfectly clear on their faces, or which may be said to be ambiguous in some other particular, when applied to the facts. *Maloney v. Johnson, ante p.* 77, 5 *A.* 2d 660; see, also, *Sussex Trust Co. v. Polite,* 12 *Del. Ch.* 64, 106 *A.* 54. Such evidence is admitted merely to aid in ascertaining the intent of the testator, and ordinarily must relate to the facts existing at the time of the execution of the will. This is because the purpose of its admission is to put the court, as nearly as possible, in the position of the testator when he executed that instrument. *Maloney v. Johnson, ante p.* 77, 5 *A.* 2d 660. Perhaps, there may be some exceptions to this general rule under unusual circumstances where the identity of real estate devised in general terms is involved. See *Sussex Trust Co. v. Polite,* 12 *Del. Ch.* 64, 106 *A.* 54, *supra.*

At common law, after acquired real estate did not pass under a general devise. Probably, because of that fact, a devise in general terms by the donee of a power was usually regarded as, in effect, a specific devise and an execution of the power, if he had no real estate of his own at the time

of his death to which it could apply; and evidence that he had no such real estate was admitted in considering his intent. 1 *Sug. on Powers,* (3 *Amer. Ed.*) 423; 23 *Hals. Laws of Eng.,* 36. If the rule were otherwise, in many cases the will of the donee would have had no effect. This was, therefore, an application of the third general rule referred to in *Wilmington Trust Co. v. Grier, et al.,* 19 *Del. Ch.* 34, 161 *A.* 921; *Lane v. Lane,* 4 *Pennewill* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122, *supra,* and approved in other Delaware cases.

Personal property was, however, said to be of a more ambulatory nature, and in determining whether a power of appointment over such property had been exercised very different general rules were applied; and a general bequest was not deemed to be in any sense specific. Under that rule, personal property owned by the donee of the power at his death, no matter when acquired, would pass under his will, and such a general bequest was, therefore, not usually regarded as the exercise of a power of appointment. In considering the execution of powers of appointment at common law, the statement was made by an eminent author that "a gift of all my personal estate will carry any personal estate which I may possess and therefore it is not specific, and consequently although I happen to have none yet it will not apply specifically to the personal property within the power." 1 *Sug. on Powers,* (3 *Amer. Ed.*) 423. Nor at common law would evidence of the amount of personal property owned by the testator at his death be considered in determining whether he had intended to execute the power by a general bequest. *Andrews v. Emmot,* 2 *Bro. C. C.* 297, 29 *Eng. Rep.* 162; *Jones v. Tucker,* 2 *Mer.* 533, 35 *Eng. Rep.* 1044; *Webb v. Honnor,* 1 *Jac. & W.* 352, 37 *Eng. Rep.* 410; *Nannock v. Horton,* 7 *Ves., Jr.,* 390, 32 *Eng. Rep.* 158; 91 *A. L. R.* 441.

In view of the evidence in the record, it may be unnecessary to consider and determine that precise question in

this case; but perhaps I might state that my attention has not been called to any logical reason why the same general rule, ordinarily governing the admission of surrounding circumstances in construing wills, should not apply here. This would seem to be particularly true in view of the language of Mr. Causey's will. See *Security Trust, etc., Co. v. Ward,* 10 *Del. Ch.* 408, 93 *A.* 385. The fact that the donee of the power had other personal property at the time of his death has been referred to in some Delaware cases, apparently in support of the conclusion that there was no intent to execute a power by a will couched in general language (*Lane v. Lane,* 4 *Pennewill* 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122) ; but invariably this has been without any discussion as to whether such evidence was properly admissible.

In the comparatively recent case of *Wilmington Trust Company v. Grier,* 19 *Del. Ch.* 34, 161 *A.* 921, the Chancellor pointed out that under the facts it was unnecessary for him to consider whether evidence of surrounding circumstances when offered should relate to the time of the execution of the will, to the death of the testator, or whether there was any distinction between real and personal property. That case likewise involved a power over the disposition of personal property. But conceding for the sake of argument that it is proper to consider whether Peter F. Causey, Jr. had any personal property at his death, the evidence shows that he was then entitled to an amount, slightly in excess of $90, of the accrued and unpaid income from the trust estate created by his mother. It is, therefore, apparent that he had some property to which the language of his will could apply, and, in any aspect of the case, it cannot be said that it clearly appears that Mr. Causey intended to execute the power of appointment given him by Jennie D. Causey's will. That may have been his intent, but if it were he was unfortunate in the language used in his will. My conclusion, therefore, is that Mrs. Marshall is entitled to that part of the accrued and undistributed income from the trust

estate to which Mr. Causey was entitled at the time of his death; with that exception, the share of the income to which he had been entitled during his lifetime must be paid to and among his brothers and sisters for life, pursuant to the provisions of his mother's will.

Whatever the explanation of the dictum in *Grant v. Mullen,* 15 *Del. Ch.* 174, 138 *A.* 613 may be, it relates to a power over real property, when the donee of the power had no real estate at his death, and is, therefore, in accord with the old common law rule above referred to, though the court did not mention that rule. Nor did it consider the possible effect on the common law rule of *Section* 3708 of the *Revised Code of* 1935 on after acquired real estate when there was merely a general devise.

A decree will be signed in accordance with this opinion.